# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DIANA LIBBY, | ) |
|       Plaintiff | ) |
| v. | )   No. 2:13-cv-238-NT |
| THE WEBBER HOSPITAL ASSOCIATION d/b/a SOUTHERN MAINE MEDICAL CENTER, | ) |
|       Defendant | ) |

## *MEMORANDUM DECISION AND ORDER ON MOTION TO AMEND*

Plaintiff Diana Libby filed a single-count complaint alleging that her employer, defendant Webber Hospital Association, d/b/a Southern Maine Medical Center ("SMMC"), discriminated against her in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(a), by failing to promote her based on concerns regarding how her military service might affect her schedule. *See* Plaintiff's Complaint for Discrimination Under Uniformed Services Employment and Reemployment Rights Act ("Complaint") (ECF No. 1). She seeks to amend the Complaint to add a state-law cause of action for military discrimination in violation of 26 M.R.S.A. § 811. *See* Plaintiff's Motion To File an Amended Complaint ("Motion") (ECF No. 13) at 1. SMMC opposes the Motion based primarily on the asserted futility of the amendment, and, secondarily, on its untimeliness. *See* Memorandum in Opposition to Motion To Amend ("Opposition") (ECF No. 16) at 1-2, 8. For the reasons discussed below, the Motion is granted.

## I. Applicable Legal Standards

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The First Circuit has explained:

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments (as was apparently the case here). Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent. Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint.

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (citations, internal quotation marks, and footnotes omitted).

The scheduling order in this case established a cut-off date of October 18, 2013, for the filing of motions to amend. *See* ECF No. 8. The Motion was filed on November 6, 2013. *See* Motion. Hence, under *Steir*, the "good cause" standard applies.

## II. Discussion

### A. Futility

#### 1. Applicable Legal Standards

An amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Adorno v. Crowley Towing & Trans. Co.,* 443 F.3d 122, 126 (1st Cir. 2006).

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011).

## 2. Factual Background

The proposed amended complaint contains the following relevant factual allegations.[1]

The plaintiff began working for defendant in November 1996 and has been with the hospital for 16 years. Plaintiff's [Proposed] Amended Complaint for Discrimination Based on Military Service (ECF No. 13-1), attached to Motion, ¶ 6. She performed her job satisfactorily. *Id*. ¶ 7. In 2005, she joined the Army Reserves. *Id*. ¶ 8. From July 2006 through October 2007, she was deployed to Iraq. *Id*. ¶ 9.

Since then, she has applied for three jobs with the defendant but has yet to be promoted despite her qualifications. *Id*. ¶ 10. She believes that she was denied these promotions because of her obligations to the military. *Id*. ¶ 11. In an evaluation process of job performance, the average score is 200, and the maximum is 400. *Id*. ¶ 12. The plaintiff has consistently scored between 370 and 390 over the past six years. *Id*.

In 2011, the plaintiff applied for a position in the emergency room and was turned down for the job. *Id*. ¶ 13. During the interview, the interviewer brought up the plaintiff's obligation with the military and its interference with scheduling. *Id*. ¶ 14. The plaintiff was questioned about her commitment to the military, how long she would be away each time, and how frequently she would be away. *Id.*

The plaintiff also applied for a position in the Special Care Unit and was turned down for the job. *Id*. ¶ 16. Her obligation with the military and its interference with scheduling were also brought up during this interview. *Id*.

---

[1] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id*. "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Id*. (citation and internal quotation marks omitted).

On February 19, 2013, the plaintiff interviewed for the position of Case Manager Coordinator. *Id*. ¶ 17. During the interview she was asked, "You often need time off for the military, sometimes two or three weeks even, how can you prevent your military service from affecting your schedule?" *Id*. ¶ 18. The plaintiff was not promoted. *Id*. ¶ 19. The defendant said that another applicant got the position because that applicant had more experience. *Id*. The plaintiff had worked for the defendant for 16 years, and in the Case Management Department for 13 years. *Id*. The applicant who obtained the position had worked in the Case Management Department for 10 years. *Id*.

### 3. Discussion

The USERRA provides, in relevant part:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

The Maine statute pursuant to which the plaintiff also wishes to proceed, titled "Preservation of status," provides, in relevant part:

> Any person who is in compliance with subsection 2 [setting forth requirements to be entitled to a military leave of absence] and is still qualified to perform the duties of such position must be reinstated at the same pay, seniority, benefits and status and receive any other incidences of advantages of employment as if the person had remained continuously employed. . . .

26 M.R.S.A. § 811(3).

The parties cite no caselaw construing 26 M.R.S.A. § 811, and my research reveals none. However, section 811 does state that "the intent of this subchapter [Leave Relating to Reserve Training or Military Service] is to minimize the disruption to the lives of persons performing

5

service in the National Guard or the Reserves of the United States Armed Forces as well as to their employers, their fellow employees and their communities by providing for the prompt reemployment of these persons upon their satisfactory completion of military service and to prohibit discrimination against these persons because of their military service." *Id*. § 811(1). In addition, as SMMC points out, *see* Opposition at 7, a summary of a 2001 bill amending the statute, L.D. 1752, stated in relevant part that the bill "fortifies reemployment rights of service members," L.D. 1752 (120th Legis. Me. 2001).

SMMC argues that the amendment would be futile because the Maine statute, unlike the USERRA, does not provide a cause of action for the denial of a promotion. *See* Opposition at 6-7. It reasons that, had the Maine Legislature intended section 811 to apply to the denial of promotions, it would have expressly so stated, as Congress did in the USERRA. *See id*. at 7. It contends that, instead, the Legislature limited the scope of section 811, which unambiguously provides only for an employer's grant of a leave of absence for military duty, reemployment when an employee returns from such a leave of absence, and reinstatement to the same employment status that he or she would have had absent the leave. *See id.* at 5, 7-8. It argues that none of the sections within the relevant subchapter (26 M.R.S.A. §§ 811-14), each of which addresses a different issue regarding military leave or reinstatement, addresses promotions. *See id*. at 7. It adds that, to the extent that the plain language does not make this clear, the Legislature noted that its bill amending the statute in 2001 "fortifies *reemployment* rights of service members." *Id*. (quoting Summary, L.D. 1752 (120th Legis. Me. 2001) (adding emphasis).

SMMC concludes that, because the plaintiff does not allege that she was either denied a leave of absence for military service or denied reinstatement upon her return from such an

absence, she fails to state a claim pursuant to 26 M.R.S.A. § 811. *See id*. at 5-6, 8 ("[I]t is . . . clear that § 811 does not apply to an employee who is not seeking to return from a military leave of absence, but who instead alleges that years after her return from deployment in Iraq she was denied a promotion because of concerns about future conflicts with her military training schedule[.]")

The plaintiff counters that SMMC's interpretation of section 811 is too narrow. *See* Plaintiff's Reply Memorandum in Support of Motion To Amend ("Reply") (ECF No. 17) at 2-3. She argues that SMMC overlooks section 811's directive that employees must "receive any other incidences of advantages of employment as if the person had remained continuously employed" as well as the Legislature's stated intent not only to provide for "prompt reemployment" but also "to prohibit discrimination against these persons because of their military service." *Id*. at 2 (quoting 26 M.R.S.A. §§ 811(1) & (3)).

The plaintiff has the better argument. Pursuant to the plain language of section 811, a person who has been given a military leave of absence must not only be reinstated but also be afforded the same incidences of advantages of employment as if he or she had remained continuously employed, just as, pursuant to the USERRA, a person may not be denied "promotion, or any benefit of employment" based on, *inter alia*, the performance of service in the military. *Compare* 26 M.R.S.A. § 811(3) *with* 38 U.S.C. § 4311(a).

As the USERRA recognizes, a promotion fits within the broad penumbra of a "benefit of employment[,]" 38 U.S.C. § 4311(a), and "benefit" equates to an "incidence[] of advantage[,]" 26 M.R.S.A. § 811(3). Indeed, contrary to SMMC's argument, the Legislature did address the subject of promotions within the subchapter at issue, stating, "Absence for military training as described in section 811 does not affect the employee's right to receive normal vacation, sick

7

leave, bonus, *advancement* and other advantages of employment normally to be anticipated in the employee's particular position." 26 M.R.S.A. § 812(1) (emphasis added). The Legislature's emphasis on "reemployment rights of service members," Summary, L.D. 1752 (120th Legis. Me. 2001), does not cut against this interpretation; the preservation of the benefits of employment, one of which is promotion, is part and parcel of a service member's reemployment rights, *see* 26 M.R.S.A. §§ 811(3), 812(1).

Logically, section 811's ban against the denial of advantages of employment extends not only to their denial at the moment of reinstatement but also to their denial thereafter, to the extent that those advantages would not have been denied had the employee not taken a military leave of absence. To the extent that the plain language of section 811(3) leaves any doubts, I resolve them in favor of the plaintiff's interpretation given the stated intention of the subchapter to provide not only for prompt reemployment of those taking military leave but also to prohibit discrimination against them because of their military service. *See* 26 M.R.S.A. § 811(1).

The proposed amendment, accordingly, is not futile.

### B. Untimeliness

SMMC opposes the Motion in part on the basis of its untimeliness, although it offers no argument in support of that position. *See generally* Opposition. The plaintiff argues that she has shown good cause for the delay because, prior to the deadline, the parties had extensive discussions about the damages available under the federal act and, to resolve that issue, she decided to move to amend the complaint to add the state cause of action. *See* Reply at 4. She states that the discussion between the parties caused her to exceed the deadline by a couple of weeks. *See id.* This is not a compelling excuse. The plaintiff fails to explain why the damages issue was not explored earlier and why, if the discussions took place prior to the expiration of the

8

deadline, she was unable to file a motion to amend or, at the least, a motion to enlarge the deadline prior to October 18, 2013.

Nonetheless, the merit of the proposed amendment, the relative brevity of the delay in seeking the amendment, and the lack of any articulable prejudice to SMMC as a result of that delay[2] counsel in favor of exercising discretion to grant the Motion, despite the plaintiff's failure to offer a good excuse for its untimely filing.

### III. Conclusion

For the foregoing reasons, the Motion is **GRANTED**. The plaintiff shall file her amended complaint (ECF No. 13-1) as a separate filing on the ECF docket by January 10, 2014. Once this Motion is finally decided, either by the absence of a timely objection to this order or by Judge Torresen's resolution of any objection filed, the Clerk's Office shall arrange a teleconference with counsel to discuss the resetting of remaining scheduling order deadlines. Pursuant to ECF No. 15, those deadlines remain **STAYED** pending that teleconference.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 27th day of December, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[2] SMMC filed a consented-to motion to stay all remaining scheduling order deadlines pending the resolution of this Motion, *see* ECF No. 14, which the court granted, *see* ECF No. 15.